## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

JAMES J. NAPLES, Assignee of
Pinewood Enterprises and
GREG STEPHENS                                    APPELLANTS

v.                      Nos.  4:13-cv-499-DPM

RENEE S. WILLIAMS, Chapter 7
Trustee, LHSW; MICHAEL E.
COLLINS, Chapter 11 Trustee; ESTATE
OF WANDA J. STEPHENS; DAVID
KIMBRO STEPHENS, Individually and on
behalf of the A. K. Tennessee Irrevocable Trust,
the Kimbro Stephens Insurance Trust, and their
equitable beneficiaries; A. K. TENNESSEE
IRREVOCABLE TRUST; UNITED STATES
TRUSTEE; KIMBRO STEPHENS INSURANCE
TRUST; and LIVING HOPE INSTITUTE, INC.           APPELLEES

and

JAMES J. NAPLES,
Assignee of Pinewood Enterprises             APPELLANT

v.                      No. 4:13-cv-547-DPM

RENEE S. WILLIAMS, Chapter 7
Trustee, LHSW and MICHAEL E.
COLLINS, Chapter 11 Trustee, LHSE               APPELLEES

and

JAMES J. NAPLES,
Assignee of Pinewood Enterprises             APPELLANT

v.                      No. 4:13-cv-667-DPM

RENEE S. WILLIAMS, Chapter 7
Trustee, LHSW; UNITED STATES

TRUSTEE; and MICHAEL E.
COLLINS, Chapter 11 Trustee                                                APPELLEES

and

A.K. TENNESSEE IRREVOCABLE TRUST;
KIMBRO STEPHENS INSURANCE TRUST;
DAVID KIMBRO STEPHENS, Individually and on
behalf of all the equitable beneficiaries of the
Kimbro Stephens Insurance Trust and the A.K.
Tennessee Irrevocable Trust                                            APPELLANTS

v.                              No. 4:13-cv-670-DPM

RENEE S. WILLIAMS; MICHAEL E. COLLINS;
UNITED STATES TRUSTEE; LIVING HOPE
INSTITUTE, INC.; ESTATE OF WANDA J.
STEPHENS, a/k/a Wanda J. Stephens; and
JAMES J. NAPLES                                                        APPELLEES

and

GREG STEPHENS                                                          APPELLANT

v.                              No. 4:13-cv-723-DPM

RENEE S. WILLIAMS, Chapter 7 Trustee, LHSW;
MICHAEL E. COLLINS, Chapter 11 Trustee;
JAMES J. NAPLES, Assignee of Pinewood
Enterprises, L.C.; U.S. TRUSTEE;
LIVING HOPE INSTITUTE, INC.; A.K. TENNESSEE
IRREVOCABLE TRUST; KIMBRO STEPHENS
INSURANCE TRUST; and DAVID KIMBRO
STEPHENS, Individually and on behalf of the A.K.
Tennessee Irrevocable Trust, the Kimbro Stephens
Insurance Trust, and their equitable beneficiaries    APPELLEES

and

2

**JAMES J. NAPLES, as Assignee**
**of Pinewood Enterprises, L.C.**                          **APPELLANT**

v.                                    **No. 4:14-cv-201-DPM**

**RENEE S. WILLIAMS, Chapter 7**
**Trustee and MICHAEL E.**
**COLLINS, Chapter 11 Trustee**                  **APPELLEES**

### ORDER

Three of these appeals are briefed on the merits and past due for a
decision.

**1. Substitution of Naples for Pinewood.**  In No. 4:13-cv-547, James
Naples appeals the bankruptcy court's ruling that, though he should be
substituted for Pinewood Enterprises, L.C., the substitution would be effective
with a gap between early January 2013 and mid-March 2013.  Some facts are
undisputed.  Pinewood assigned all its rights in this litigation to Naples on 31
December 2012.  Naples was Pinewood's sole member.  He executed the
assignment for the company (as assignor) and for himself (as assignee).  The
assignment was part of a large and complicated transaction.  Naples is a
sophisticated business man, experienced in complicated transactions.  Naples
didn't tell the bankruptcy court about the assignment for approximately three
months; and when he disclosed the transaction during a hearing, he did so by
saying he'd just learned about it.  Pinewood filed papers in this and related

3

litigation for about two and a half months after the assignment without disclosing it. On these facts, the bankruptcy court found that Naples's explanation of belated understanding was not believable. Primarily applying Federal Rule of Bankruptcy Procedure 7017 and Federal Rule of Civil Procedure 17(a)(3), and guided by the Advisory Committee Notes (1966 Amendment) to Rule 17, the court held that no honest mistake occurred, and so substitution with a gap was appropriate.

No clear error exists in the bankruptcy court's factual findings about Naples's knowledge or his credibility. *Ritchie Special Credit Investments, Ltd. v. U.S. Trustee*, 620 F.3d 847, 853 (8th Cir. 2010). Naples is a man of many lawyers and many deals. His counsel in this case, for example, knew nothing about the Pinewood assignment that Naples had done with his tax and transactional lawyers. The bankruptcy court's finding — that Naples's wide experience in business and litigation undercut his assertion that he didn't learn about or understand his December 2012 assignment until March 2013 — is not clearly erroneous.

On *de novo* review of the legal issues about substitution, *In re Treadwell*, 637 F.3d 855, 863 (8th Cir. 2011), this Court reverses nonetheless. Federal Rule

4

of Civil Procedure 25(c) is more applicable than Rule 17(a)(3).  Naples should have disclosed the assignment immediately.   But, notwithstanding the transfer and the nondisclosure, Pinewood could continue as a party until the bankruptcy court ordered substitution.  Pinewood's actions were effective in law.  FED. R. CIV. P. 25(c); *ECLA Enerprises, Inc. v. Sisco Equipment Rental & Sales, Inc.*, 53 F.3d 186, 191 (8th Cir. 1995).  And its actions became Naples's when he was substituted.  No argument is made that Naples gained some tactical advantage, or that any party suffered any prejudice, from his silence. What happened dented his credibility, but had no legal effect insofar as this Court can see.  The substitution was effective for all purposes, looking forward and backward, when the bankruptcy court ordered it.

The Court understands the bankruptcy court's and the parties' focus on Rule 17 because of the withdrawn *Barton* motions for leave to file complaints. But given the advanced stage of this litigation, and Naples's knee-deep involvement, neither Rule 17 nor the precedent interpreting it have any real work to do.  In that important sense, the substitution issue here is, as Naples suggests, much like the one Chief Judge Holmes faced in No. 4:13-cv-4028, № 44.  Whatever the persuasive power of the Advisory Committee's Notes in

5

sham-litigation cases, no such live issue remained in this case when Naples moved for substitution. *Metal Forming* and like cases are distinguishable: most importantly, the substitution here involved ongoing litigation, not starting a new lawsuit; the delay was a few months, not more than a year; and whatever advantage Naples may have been seeking by holding back on the assignment, as things developed, he gained nothing in this case. *Compare Metal Forming, Technologies, Inc. v. Marsh & McLennan Co.*, 224 F.R.D. 431, 432–34 (S.D. Ind. 2004). Naples was properly substituted for Pinewood, but the carve out for post-assignment/pre-notice filings was unnecessary and legally mistaken.

**2. The Stay of the Miller County Case.** Naples challenges in No. 4:13-cv-499 and No. 4:14-cv-201 the bankruptcy court's handling of the automatic stay of related litigation. The court erred, he argues, in concluding that the stay hadn't ended by operation of law and, in any event, in refusing to lift the stay. These issues are best addressed together.

**No. 4:13-cv-499.** Did the bankruptcy court's handling of Naples's motion to lift the automatic stay result in the stay's termination by operation of law? The bankruptcy court answered no, reasoning that 11 U.S.C. §

362(e)(1)'s strict deadlines and requirements did not apply because Naples isn't a secured creditor of Living Hope Southeast. № 1-23, B. № 276. Naples argues hard from the statute's plain meaning that this reading was wrong as a matter of law. It's common ground that the statutory deadlines and requirements were not met. This Court reviews *de novo*. *In re Treadwell*, 637 F.3d at 363. The controlling statute's text is in the margin.[*]

There's force in Naples's argument from the statute's words. In the Miller County case, Naples seeks to impose a constructive trust on Living

---

[*] Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section. The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing. If the hearing under this subsection is a preliminary hearing, then such final hearing shall be concluded not later than thirty days after the conclusion of such preliminary hearing, unless the 30-day period is extended with the consent of the parties in interest or for a specific time which the court finds is required by compelling circumstances.

11 U.S.C. § 362(e)(1).

Hope Southeast's assets.  When the company filed its petition, 11 U.S.C. §

362(a)'s automatic stay stopped proceedings against the debtor.  Naples

moved to lift the stay of an act (the lawsuit) against the property of the estate

(Living Hope Southeast's assets).

As Living Hope Southeast's chapter 11 trustee says, and Naples

acknowledges, § 362(e)(1)'s termination provisions must be read in tandem

with § 362(a)'s various stay provisions.  Congress did not define the phrase

"stay of any act against the property of the estate under subsection (a) of this

section[.]" The parties spar over how the subsections work together and

which provisions of subsection (a) the termination provision embraces.  One

reading, not urged by either side, is that subsection (e) may reach each of

subsection (a)'s provisions.  The sum of all this, this Court concludes, is

ambiguity, not the certainty of plain words.  *Compare Owner-Operator*

*Independent Drivers Association v. United Van Lines, LLC*, 556 F.3d 690, 693 (8th

Cir. 2009).

To resolve the ambiguity, this Court must consider § 362(e)(1)'s

purpose.  The Third Circuit's decision in *In re Wedgewood* is particularly

helpful on this score.  The automatic stay almost always favors the interests

8

of debtors and unsecured creditors by creating a breathing spell, especially against secured creditors, who could otherwise be liquidating their rights. Sections 362(d) & (e) provide balance: a certain method for secured creditors to get a prompt determination—either in a merits ruling or by default from the calendar—that the breathing spell is over. *In re Wedgewood Realty Group, Ltd. v. Wedgewood Realty Group, Ltd.,* 878 F.2d 693, 696–98 (3rd Cir. 1989). The legislative history of § 362(e), while not dispositive, illuminates the statute. *United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 26–7, 31 (1982). According to the House and Senate Reports, the provision was written to protect secured creditors. H.R. REP. NO. 95-595 at 344 (1977), *reprinted in* 1978 U.S. CODE CONG. & ADMIN. NEWS at 6300; S. REP. NO. 95-989 at 53 (1978), *reprinted in* 1978 U.S. CODE CONG. & ADMIN. NEWS at 5839; *see also In re Looney,* 823 F.2d 788, 793 (4th Cir. 1987). The cases seem to speak as one: § 362(e)'s protections are limited to secured creditors. Naples hasn't cited a case adopting his novel reading of the statute, and the Court has found none. The leading treatise's discussion of § 362(e) and its evolution, finally, lends no support to Naples's argument. *See generally,* 1, 3 COLLIER ON BANKRUPTCY at ¶¶ 1.01, 1.05, 362.08, 362.LH (16th ed.).

9

All material things considered, the bankruptcy court construed this ambiguous statute correctly: the automatic stay didn't terminate automatically because Naples isn't a secured creditor.

**No. 4:14-cv-201.** The last question is whether the bankruptcy court abused its discretion in denying Naples's motion to lift the stay. The parties agree on the standard of review and the *Blan* factors. *In re Blan*, 237 B.R. 737, 739–40 (B.A.P. 8th Cir. 1999); *In re Wiley*, 288 B.R. 818, 821–23 (B.A.P. 8th Cir. 2003). After a hearing, the bankruptcy court filed a lengthy opinion applying the factors in light of the parties' many contending arguments. № 2-67; B. № 450. Naples argues several things on appeal: at least one error of law compromised the bankruptcy court's decision; the court erred in various particulars on each *Blan* factor; and the court in general misevaluated the circumstances.

First, whether to lift the stay of Naples's suit against Living Hope Southwest Miller County is, in this Court's view, a close question. That circumstance counsels deference to the experienced judge who has been living in the details of this case for more than two years. There's no substitute on appellate review for the trial judge's feel for the case as a whole.

10

Second, the bankruptcy court stumbled on the preclusive effect that *could* be accorded a preliminary injunction. On *de novo* review, this Court concludes that Naples has the better of this argument about an unsettled point of Arkansas law. The legal error was harmless, however, because, as the bankruptcy court correctly held, the Miller County circuit court's findings were not sufficiently particularized about Living Hope Southeast such that its likely-success finding *should* be accorded preclusive effect.    As the Restatement makes plain, this is a nuanced matter. RESTATEMENT (SECOND) OF JUDGMENTS § 13 and comment g. The bankruptcy court was concerned, and rightly so, about whether the parties were fully heard about Living Hope Southeast and whether the circuit court's decision was sufficiently detailed about that one among the thirteen defendants. Perhaps most importantly, though the circuit court studied voluminous exhibits and held a hearing, it heard no testimony. The intent issues swirling around imposition of a constructive trust make testimony essential.    Chief Judge Holmes's conclusion, in a related case, that the Stephenses had fleeced various entities, weighs in the balance but is not dispositive on the particulars of Living Hope Southeast.  Preclusion is strong medicine, which should be administered

11

sparingly. The bankruptcy court correctly exercised independent judgment on the likely-success issue and, again based in part on its great familiarity with the case, found Naples's chances on his novel and complicated claim were less than a lock.

Third, this Court sees no clear error in judgment in weighing all the material circumstances. *Aaron v. Target Corp.*, 357 F.3d 768, 774 (8th Cir. 2004). Here again, Naples is partly right, in this Court's view, but the bankruptcy court's ultimate conclusion was among the reasonable choices presented. Judicial economy probably does favor letting the Miller County case go forward. It's moss bound; and the stay will put Naples to duplicative litigation. That's undoubtedly a hardship. Trial readiness is a wash — more work must be done, especially in discovery, wherever Naples's claim is litigated. Most preliminary bankruptcy issues appear to have been resolved. But if Naples prevailed in Miller County, the bankruptcy court would have to resolve tangled avoidance issues under 11 U.S.C. § 544 (a)(3). On likely success, the bankruptcy court's evaluation was understandable and reasonable, especially given Judge Mixon's finding in the adversary proceeding that no assets passed from Living Hope Southwest to Living Hope

12

Southeast.  Imposing a constructive trust is, as the cases say, anathema to bankruptcy's goals.  This point leads to the last: the bankruptcy court's conclusion— lifting the stay would divert resources unnecessarily to more lawyer's fees in the short run, could impede the sale of Living Hope Southwest in the middle run, and could harm other creditors in the long run—was reasonable. *In re Blan*, 237 B.R. at 739–40.  A sale, as soon as possible, does seem the best outcome for all parties.

Balancing the hardship to Naples of maintaining the stay against the potential prejudice to Living Hope Southeast estate is ultimately a matter of judgment.  There's no perfectly clear answer one way or the other.  There are simply too many pieces moving, and too many ifs, to know with certainty what's really best in the circumstances.  The bankruptcy court's judgment call that Naples's claim against Living Hope Southeast should be resolved in the bankruptcy court was not an abuse of discretion.

* * *

Substitution order reversed on the effective date in Case No. 4:13-cv-547. No-automatic-termination order in Case No. 4:13-cv-499 affirmed. Order denying relief from the stay in Case No. 4:14-cv-201 affirmed.

13

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

29 September 2014

14